# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF MISSISSIPPI

**UNITED STATES OF AMERICA**

**V.**                                                      **NO. 1:16-CR-118-6**

**SANDRA ARNOLD**

### ORDER

Representing that both her husband Jackie Arnold and his niece Melissa have passed away, Sandra Arnold asks the Court to release to Melissa's son Hunter the funds Melissa paid to secure her bond. There is no question that Melissa was Sandra's third party surety. But because Sandra has not submitted evidence to show that Melissa's only heir-at-law is Hunter and that she is authorized to request the funds on his behalf, the request to release the funds to Hunter will be denied without prejudice.

### I
### Background

On December 14, 2016, Jackie Arnold and Sandra Arnold, husband and wife, were named along with five other individuals in a thirteen-count indictment charging various archaeological crimes. Doc. #1. Following their arrest, they were released from custody upon each posting a $5,000 secured appearance bond. Docs. #30, #31, #32, #33. Sandra's bond was secured by $500 in cash paid by Melissa Arnold.[1] Doc. #32-1.

On April 26, 2017, Sandra pled guilty to Count Four of the indictment, which charged her with unlawfully excavating archaeological resources on historic public lands where the cost of restoration and repair exceeded $500.[2] Doc. #67. On September 7, 2017, this Court sentenced

---

[1] Jackie's bond was secured by $500 in cash also paid by Melissa. Doc. #33-1.

[2] Jackie pled guilty to the same count of the indictment on May 25, 2017. Doc. #85.

Sandra to imprisonment for twelve months and a day with one year of supervised release, and ordered her to pay $18,626.53 in restitution, jointly and severally with all of her codefendants, including Jackie.[3]  Doc. #173.

Over five years later, on December 5, 2022, the Court received a letter from Sandra requesting that the cash Melissa paid to secure her bond be released to Melissa's son Hunter Arnold.  Doc. #286.  The substance of the letter states in its entirety:

> I, Sandra B. Arnold, am writing … regarding bail money that was posted …. Myself & my husband, Jackie Arnold, was incarcerated in 2017. His niece [sic], Melissa Arnold, posted … bond of $1,000.00. Since then Melissa Arnold has passed away. My husband, Jackie Dale Arnold, passed away Sept. 24st 2021. I am including his death certificate. Hunter Arnold is Melissa Arnold's son; he is her surviving relative & is entitled to the bond money. I am requesting that the bond money be refunded to him. … The address … for Melissa Arnold & [sic] is the same for Hunter Arnold.

*Id.* at PageID 983.[4]  The letter bears a notary stamp beside Sandra's signature.  *Id.*  And enclosed with the letter are a Certificate of Death for Melissa, Doc. #286-1, and a Certificate of Death for Jackie, Doc. #286-2.  The government has advised that it does not object to the relief requested.

## II
## Discussion

Two matters bear mention at the outset.  First, contrary to Sandra's representation in the letter, Melissa paid $500 to secure her bond, not $1,000.  *See* Doc. #32-1.  And for similar reasons this Court discussed in a prior order in Jackie's other criminal case, there can be no dispute that Melissa was Sandra's third party surety.[5]  *See United States v. Arnold* , No. 1:18-cr-30, at Doc. #69 (N.D. Miss. Feb. 27, 2020).

---

[3] On October 13, 2017, this Court sentenced Jackie to fifteen months imprisonment with one year of supervised release, and ordered him to pay $24,357.77 in restitution, jointly and severally with all of his codefendants, including Sandra. Doc. #204.

[4] The letter is a duplicate of the one filed with respect to the bond money paid on Jackie's behalf.  Doc. #285.  Though it was not revised to apply specifically to Sandra, the Court construes it as such.

[5] There is no evidence that the money Melissa used to pay the bond security belonged to anyone else but Melissa.

Federal Rule of Criminal Procedure Rule 46(g) provides that "[t]he court must exonerate the surety and release any bail when a bond condition has been satisfied …. The court must exonerate a surety who deposits cash in the amount of the bond …."[6] So the pivotal question is whether this Court should grant Sandra's request to release to Hunter the cash Melissa, as Sandra's third party surety, paid to secure Sandra's bond. Based on the content of Sandra's letter and the two certificates of death attached, this Court must answer the question in the negative for now.

The Court's research reveals no case law directly addressing what is required to release to an heir of a deceased third party surety the money the third party surety paid to secure a defendant's bond. The only case the Court has found which comes close is *United States v. Ware*, No. 04 Cr. 1224, 2021 WL 3188248 (S.D.N.Y. July 28, 2021). In that case, $50,000 was paid to secure Ware's bond—$25,000 posted by Ware and $25,000 posted by Ware's mother. *Ware*¸ 2021 WL 3188248, at *1. The government moved pursuant to 28 U.S.C. § 2044 to apply the money to Ware's $47,845.66 outstanding debt to the government. *Id.* The court held the government was "entitled to apply $25,000 [paid by Ware] to Ware's judgment under the plain text of § 2044" because such money belonged to and was deposited by Ware. *Id.* With respect to the $25,000 paid by Ware's mother, the court concluded that one-third of that amount should be released to the government because it belonged to Ware by virtue of a bequeath in his mother's will and thus was subject to the liens created by the judgments against him. *Id.* at *2. The court explained:

> [T]he $25,000 posted by Ware's mother, Mary Sue Ware, would ordinarily not be subject to § 2044 because it was not posted by Ware himself. However, the Government has submitted evidence showing that Ware's mother passed away on January 27, 2011. According to the copy of Mary Sue Ware's Last Will and Testament submitted by the Government, Mary Sue Ware bequeathed "all the rest and residue of my estate of every kind and description … which I may own or to which I may be entitled to at the time of my death … to my three children, Glinda

---

[6] 28 U.S.C. § 2044, which governs when money paid to secure a bond shall be paid to the government, offers no guidance here because by its own terms, it "shall not apply to any third party surety."

S. Ware, Michael Ware and Thomas Ware, in equal parts per stirpes." Ware signed his opposition brief on behalf of himself "individually and as the legal representative for the estate of third party surety Mary S. Ware," but the underlying records show that Ware's sister Glinda—and not Ware—was appointed as representative of the estate. The estate closed on October 17, 2014 and Glinda was relieved from all liability. On June 24, 2021, the Government sent a letter to Glinda and Michael Ware to provide them notice of this motion. As of the date of this order, neither had responded to the motion.

As set forth above, only one-third of the $25,000 posted by his mother, or $8,333.33, was bequeathed to Ware under the plain terms of the Will, and can thus be said to "belong[ ] to" him. However, Ware's inheritance from his mother is also subject to the liens created by the judgments against him. The other $16,666.67, however, was bequeathed to Glinda and Michael Ware under the Will. Having received no response to the Government's letter from either of Ware's siblings, the Court orders Ware's share of $8,333.33 to be applied toward his unsatisfied judgments. The other $16,666.67 shall remain in the court's registry unless and until Ware's siblings seek its return to them.

*Id.* (cleaned up). The documents aiding the decision in *Ware* included Ware's mother's death certificate but also her will and records identifying the representative of her estate. *Id.*

Here, Sandra submitted only a copy of the death certificates of Jackie and Melissa. Nothing was submitted to evidence (1) that Melissa's sole heir-at-law is a son named Hunter;[7] (2) whether Melissa died testate or intestate;[8] (3) if she was testate, her last will and testament and whether the bond security is covered by such will;[9] (4) the identity of the administrator or executor of Melissa's estate, if any; and (5) Sandra's standing to request the relief on behalf of Melissa's son (or whether Melissa's son is of an age where he may pursue such relief on his own behalf). Though there is a

---

[7] *See* Miss. Code Ann. § 91-1-29 (describing process for determination of heirs at law and providing that judgment that persons recognized as the heirs at law "shall be evidence in all the courts of law and equity in this state that the persons therein named are the sole heirs at law of the person therein described as their ancestor").

[8] *See* Miss. Code Ann. § 91-1-27 ("In all cases in which persons have died, or may hereafter die, wholly or partially intestate, having property, real or personal, any heir at law of such deceased person, or any one interested in any of the property as to which he shall have died intestate, may petition the chancery court … praying that the person named in said petition be recognized and decreed to be the heir at law of said deceased.").

[9] *See* Miss. Code Ann. § 91-1-13 ("All estate, real and personal, not devised or bequeathed in the last will and testament of any person shall descend and be distributed in the same manner as the estate of an intestate; and the executor or administrator shall administer the same accordingly").

4

notary stamp beside Sandra's signature on the letter, such means only that Sandra is indeed the person who signed the letter but does not verify its contents.[10]

### III
### Conclusion

For the reasons explained above, Sandra's request to release the security paid by Melissa to Hunter [286] is **DENIED without prejudice**.

**SO ORDERED**, this 30th day of January, 2023.

/s/Debra M. Brown
**UNITED STATES DISTRICT JUDGE**

---

[10] *See* Miss. Code Ann. § 25-34-31(8) ("The signature of a notarial officer certifying a notarial act may not be deemed evidence to show that the notarial officer had knowledge of the contents of the record so signed, other than those specific contents which constitute the signature, execution, acknowledgment, oath, affirmation, affidavit, verification or other act which the signature of that notarial officer chronicles"); *see also* Miss. Code Ann. § 25-34-11(1) ("A notarial officer who … witnesses or attests to a signature, must determine … that the individual appearing in person before the officer has the identity claimed and that the signature on the record is the signature of the individual"); Miss. Code Ann. § 25-34-7(1)(e) (listing "Witness or attest signatures" as an act a notarial officer may perform). The letter is not an affidavit. And it cannot be deemed a declaration under 28 U.S.C. § 1746 because it does not contain the requisite language.